**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Second Floor
Roseland, New Jersey 07068
(973) 622-1800
Anthony Sodono, III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Proposed Counsel for 703 Bakery Corp.,*
*Chapter 11 Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>703 BAKERY CORP.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 24-15150 (VFP) |

**DECLARATION OF OLEG AZIZOV IN SUPPORT OF**
**CHAPTER 11 FILING AND FIRST DAY MATTERS**

**OLEG AZIZOV,** of full age, pursuant to 28 U.S.C. § 1746, hereby certifies and declares as follows:

1. I am the President of 703 Bakery Corp., the Subchapter V Chapter 11 Debtor and Debtor in Possession (the "Debtor" or "703") in the above referenced matter. I own 99.5% of the Debtor. Jacob Hammerman owns .5% of the Debtor. I am fully familiar with the Debtor's business and financial affairs, including the facts and circumstances set forth herein.

2. I submit this declaration (the "Declaration") in support of the Debtor's voluntary petition for relief under Subchapter V, chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the relief that the Debtor has requested from the Court in various motions filed contemporaneously herewith (the "First-Day Pleadings"). The relief sought in each of the First-Day Pleadings (1) is necessary to enable the Debtor to operate in chapter 11 with minimal

disruption to the Debtor's business without loss of value; and (2) best serves the interests of the Debtors' estate, creditors, and other parties in interest.

3. Except as otherwise indicated, the facts set forth in this Declaration are based on my personal knowledge, information learned from my review of the Debtor's relevant documents, including financial information, or my opinion based upon my experience and knowledge of the Debtor's operations and financial condition. This Declaration is intended to provide a brief background of the Debtor, a description of its assets, financial situation, the reasons for the chapter 11 filing, the objective in the chapter 11 process, and a summary of the relief sought in each of the First-Day Pleadings.

4. If called as a witness in this bankruptcy proceeding, I could and would testify to the best of my knowledge competently to the facts set forth in this Declaration. Unless otherwise indicated, all financial information set forth in this Declaration is presented on an unaudited basis.

## **BACKGROUND**

5. 703 is an artisan bakery and café that operates a manufacturing facility in Lyndhurst, New Jersey as well as retail stores. The Debtor has 131 employees, 20 of which are employed on a part-time basis.

6. 703 has eleven (11) operating stores located in New Jersey and New York.

7. The Debtor operates stores located at:

   i. 676 Amsterdam Ave, NY, NY 10025 ("Amsterdam").

   ii. The Arthouse Hotel at 2178 Broadway, NY, NY 10024 ("Arthouse").

   iii. 1716 Avenue M, Brooklyn, NY 11230 ("1716 Avenue").

   iv. 44 West 37th Street, NY, NY 10018 ("Bryant Park").

   v. 3611 14th Ave, Brooklyn, NY 11218 ("Brooklyn Square").

      vi.    266 Kingston Ave, Brooklyn, NY 11213 ("Crown Heights").

      vii.    1700 Madison Ave, Lakewood, NJ 08701 ("Lakewood").

      viii.    295 Burnside Ave, Lawrence, NY 11559 ("Lawrence").

      ix.    323 Ridge Rd, Lyndhurst, NJ 07071 ("Lyndhurst").

      x.    439 Cedar Ln, Teaneck, NJ 07666 ("Teaneck").

      xi.    750 8th Avenue, NY, NY 10036 ("Times Square").

## CIRCUMSTANCES LEADING TO BANKRUPTCY

**Equipment Purchases and Loans**

8. The Debtor has certain leases and finance agreements with certain vehicle and equipment lenders.

9. Upon information and belief, on January 31, 2020, 703 borrowed $190,000 from Share Zion Catering, LLC to purchase equipment from Direct Kitchen Equipment with a 61-month lease term.

10. Upon information and belief, on June 1, 2022, 703 borrowed $82,510.06 from Targeted Lending Co., LLC for kitchen equipment with a 60-month term at a rate of $2,095.00 per month.

11. Upon information and belief, on June 2, 2022, 703 borrowed $149,080.75 from Banclease Acceptance Corp. for kitchen equipment with a 60-month term at a rate of $3,114.83 per month.

12. Upon information and belief, on July 5, 2022, 703 borrowed $55,000 from Citizens Capital for equipment purchased from Direct Kitchen Equipment with a 60-month term.

13. Upon information and belief, on that same day, 703 entered into an Equipment Finance Agreement with m$^2$ Equipment Finance LLC for $83,180.50 to purchase a walk-in

refrigerator and walk-in freezer from Direct Kitchen Equipment at a rate of $1,764.37 per month with a 60-month loan term.

14. Upon information and belief, on July 26, 2022, 703 purchased a gas oven from Direct Kitchen Equipment for $30,000 with a 60-month lease term. That same day, 703 completed an Equipment Financing Agreement with Citizens Capital to obtain more equipment at a rate of $1,295 per month with a 60-month lease term.

15. Upon information and belief, on August 3, 2022, 703 borrowed $70,768.75 from Centra Funding, LLC to purchase a walk-in freezer from Direct Kitchen Equipment.

16. Upon information and belief, on August 9, 2022, 703 Bakery signed a Lease Addendum with Pawnee Leasing Corporation as part of the Lease Agreement 703 made on July 5, 2022, for $30,000 in equipment to be paid $840.74 a month with a 60-month lease term.

17. Upon information and belief, on August 18, 2022, 703 borrowed $290,000 from Commercial Funding Partners, LLC with a 60-month lease term to purchase kitchen equipment.

18. Upon information and belief, on or around September 16, 2022, 703 leased two used Wishek Dibas 64 Blue Baking Bake Bread Ovens and a pan washer from Envision Capital Group LLC for $108,657.25 with a 60-month lease term at a rate of $2,434.92 per month.

19. Upon information and belief, on August 21, 2022, 703 signed an Equipment Finance Agreement with Regents Capital Corporation to cover the expenses of the Wiesheu Dibas 64 Blue Baking Bread oven, pan washer, and tax for $108,657.25.

20. Upon information and belief, on October 1, 2022, 703 borrowed $290,250.31 from CFP New York, LP with a 60-month lease term to purchase kitchen equipment from Direct Kitchen Equipment.

21. Upon information and belief, on March 1, 2023, 703 borrowed $106,697.50 from First-Citizens Bank & Trust Company to purchase a walk-in freezer and a walk-in refrigerator from Direct Kitchen Equipment with a 60-month lease term at a monthly rate of $2,539.97.

22. Upon information and belief, on May 3, 2024, 703 purchased equipment for $120,000 with a 60-month lease term from Commercial Funding Partners, LLC.

23. Debtor's counsel is in the process of reviewing the above loan documents and will address them in the appropriate manner.

**SBA Loan[1]**

24. On August 30, 2020, 703 executed and delivered to the U.S. Small Business Administration (the "SBA") a Loan Agreement in the principal amount of $36,700.00 (the "Loan"). The Loan further provides that interest shall be accrued on the Loan at a rate of 3.75% per annum, with monthly payments of principal and interest in the amount $179.00 commencing twelve (12) months from the date of promissory Note, and with all outstanding principal and interest due and owing on a maturity date of thirty (30) years from the date of the promissory Note.

25. On February 19, 2022, 703 executed and delivered to the SBA an Amended Loan Agreement, through the Disaster Loan Application, in the principal amount of $146,500.00. The Loan further provides that interest shall be accrued on the Loan at a rate of 3.75% per annum, with monthly payments of principal and interest in the amount $741.00 commencing twenty-four (24) months from the date of promissory Note, and with all outstanding principal and interest due and owing on a maturity date of thirty (30) years from the date of the Note.

---

[1] The Debtor is reviewing the UCC-1 results and is in the process of reviewing any and all loan documents. For full disclosure, upon information and belief, Samuel Nebenzahl filed a UCC-1 in accordance with a loan he provided to the Debtor.

26. To secure the obligations evidenced by the Loan Agreement, 703 granted the SBA a security interest in and to certain goods, including, but not limited to, inventory, equipment, fixtures, instruments, documents, accounts, chattel paper, deposit accounts, letter of credit rights, investment property, general intangibles, and the proceeds thereof. As of the Petition Date, there remains due and owing to the SBA under the Loan the approximate amount of $135,000. Upon information and belief, the value of the Debtor's collateral fully secures the SBA's lien subject to due diligence on Mr. Nebenzahl's claim. Thus, the SBA enjoys a lien on 703 Bakery's Cash Collateral.

**Square**

27. On January 11, 2024, 703 entered into a Loan Agreement with Square Financial Services Inc. ("Square") for 703 Bryant Park Location. In the Agreement, 703 borrowed $148,233.00 at a repayment rate of 20%. Upon information and belief, Square has a secured interest in (a) all Square Accounts, Receivables, and all balances in all Square Accounts; (b) all accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, letters of credit and money. Square is undersecured.

**PACA**

28. 703 accrued between $300,000 and $400,000 in debt from Rossman Fruit & Vegetables Dist. Inc. ("Rossman"), a Perishable Agricultural Commodities Act ("PACA") licensed organization. Rossman, however, may not have established a viable PACA claim under the law.

**Gift Cards**

29. Currently, 703 has sold approximately 21,000 gift cards with a current outstanding

balance of $851,000 across all 11 locations.

30. Based on the secured and unsecured debt, 703 cannot meet its debts as they come do compelling the bankruptcy.

## CAPITAL STRUCTURE

### A. Secured Debt

31. The secured debt is listed above.

### B. Unsecured Debt

32. 703 owes certain vendors, banks, line of credits, and credit cards, as of the Petition Date. The Debtor is analyzing the claims and will set forth such creditors when all schedules are filed. These creditors are essential to 703's livelihood.

## CHAPTER 11 FILING

33. 703 filed its voluntary Chapter 11 petition on May 21, 2024 ("the Petition Date") to stave off an eviction proceeding at 750 Eighth Avenue, New York, New York 10036. 703 intends to continue operations.

## REORGANIZATION PURPOSE

34. 703 intends to reorganize through restructuring its debt to creditors in a plan of reorganization and fund its plan through operations and cash infusion from Data Points Enterprises, LLC. The goal is to maximize the distribution to creditors and maintain 703's assets.

## FIRST-DAY MOTIONS

35. Concurrently with the filing of its chapter 11 petition, 703 filed certain motions and proposed orders (collectively, the "First-Day Orders"). 703 requests this Court enter each of the First-Day Orders described below, as each is critical to 703 achieving successful results in its chapter 11 case for the benefit of all parties-in-interest.

**A. Motion for an Interim Order and a Final Order (i) Prohibiting Utility Companies from Discontinuing, Altering, or Refusing Service; (ii) Deeming Utility Companies to Have Adequate Assurance of Payment; and (iii) Establishing Procedures for Resolving Requests for Additional Assurance Pursuant to 11 U.S.C. §§ 105(a) and 366**

36. 703 seeks entry of (i) an Interim Order, and (ii) a Final Order, pursuant to sections 105(a) and 366 of the Bankruptcy Code, (a) prohibiting the utility companies from discontinuing, altering or refusing service at the Debtor's Properties, except as set forth herein, (b) deeming the utility companies adequately assured of future performance on the basis of payment of a two-week security deposit, and (c) establishing procedures for resolving requests for additional assurance of payment.

37. Uninterrupted utility services are essential to the Debtor's success in chapter 11. Indeed, any disruption to the business by virtue of the cessation of utility services by the utility companies will bring 703's operations to a halt.

38. In accordance with Bankruptcy Code section 366(c)(1)(A), 703 proposes to provide additional assurance of payment to each utility company. Specifically, 703 proposes to issue a security deposit equal to approximately two weeks' estimated average utility consumption to each utility company.

**B. Debtor's Motion Seeking Entry of Interim and Final Orders (I) Authorizing Debtor to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants, (II) Granting Administrative Expense Priority to All Undisputed Obligations on Account of Outstanding Orders, and (III) Granting Related Relief.**

39. Uninterrupted sanitation services are essential to the Debtor's success in chapter 11. Indeed, any disruption to the business by virtue of the cessation of sanitation services will bring 703's operations to a halt. Accordingly, the Debtor's ability to continue generating revenue and operating its business, and thus the success of this chapter 11 case, fundamentally depends on the Debtor's ability to continue to maintain sanitation services at all locations. At each of the

8

eleven (11) locations that the Debtor operates, in the ordinary course of business, the Debtor's vendors are indispensable to the commercial viability of the Debtor's business enterprise (the "Critical Vendors"). These Critical Vendors include the following (a) Cogent Waste Solutions LLC, (b) Interstate Waste Services, Inc., (c) Express Recycling and Sanitation, (d) Industrial Carting, and (e) Waste Connections of New York Inc.

40. If the Debtor is unable to pay pre-petition claims held by the Critical Vendors and continue to pay amounts owed to the Critical Vendors as they come due in the ordinary course post-petition (collectively, the "Critical Vendor Claims"), the Critical Vendors may refuse to provide the services the Debtor needs to maintain ordinary course operations. Accordingly, paying the Critical Vendor Claims is essential for maintaining the going concern value of the Debtor's business and minimizing operational degradation as 703 works to affect a comprehensive reorganization of its business. Thus, the Debtor requests authorization to pay the Critical Vendors but not mandating same.

**C. Motion for Authority to Continue to Use Existing Bank Accounts**

41. Currently, 703 has bank accounts at Bank of America and Dime Bank. The bank accounts held at Bank of America and Dime Bank are referred to as the "Bank Accounts."

42. In the ordinary course of business, 703 receives deposits and issues checks, wire transfers and ACH transfers into and out of the Bank Accounts. 703 will, however, either print or stamp "Debtor-in-Possession" on the checks, and when it replaces stock, will obtain checks marked "Debtor-in-Possession."

43. The Debtor desires to maintain all bank accounts at Dime Bank since it enjoys a productive, professional relationship with the bank. Moreover, the Debtor has established an infrastructure with Dime Bank and it would be difficult to replace Dime with an new bank.

4869-9496-4161, v. 1

**D. Motion for an Order Authorizing the Debtor to Pay Pre-Petition Wages, Salaries, Compensation, and Reimbursable Business Expenses Up to the Limits Set Forth in Bankruptcy Code § 507(a).**

44. 703 has 131 employees approximately 20 of which are part-time. 703 seeks authorization to (i) pay employee claims for wages, salaries, commissions, contractual compensation, sick pay, personal pay, holiday pay, other accrued compensation, withholding and payroll related taxes for the Current Pay Period (as defined therein); and (ii) direct all banks to honor pre-petition checks for payment of employee obligations in the Current Pay Period. Funds are paid out of 703's payroll account at Dime Bank. 703 uses ADP ("ADP") to process its payroll, calculate paychecks, administer all payroll deductions and tax withholdings, and file related tax returns

45. Any payments in respect of prepetition wages, salaries, commissions, and other compensation and benefit programs will not exceed the employee limitation for the Current Pay Period allowable as a priority claim under Bankruptcy Code sections 507(a)(4) and (5).

46. 703 believes that the payment of the employee obligations is essential to maintain the critical employees during the pendency of the chapter 11 case and to ensure they remain with 703.

47. The Debtor pays its 131 employees weekly – every Wednesday. The Debtor uses ADP to process its payroll, calculate paychecks, administer all payroll deductions and tax withholdings, and file related tax returns.

**E. Motion for an Order Authorizing the Debtor to Continue Credit Card Facilities.**

48. 703 accepts credit and debit card payments in a significant number of transactions in the ordinary course of its operations. 703 seeks an order directing its credit card processor to honor its contract with 703 pending assumption or rejection under sections 105(a) and 365 of title

11 of the United States Code.

49. To complete these transactions, 703 maintains a contract with Square, who, after processing payments and deducting charges, deposits the proceeds in a bank account maintained by 703. The Debtor is in the process of switching over to a new processor – Clover via Fidelity Payment Services.

50. Continued use of the credit card facility is integral to 703's ability to operate without interruption and maximize its estate.

**F. Motion for Order Authorizing Debtor to Maintain and Administer Its Existing Customer Program and Honor Certain Prepetition Obligations**

51. The Debtor currently has approximately 21,000 gift cards that have a positive balance of $851,000 outstanding.

52. It is essential to the Debtor's business operations to continue honoring these gift cards. Without the ability to continue honoring the gift cards and to satisfy prepetition obligations in connection therewith, the Debtor risks losing customer loyalty, goodwill, and market share.

**G. Motion Authorizing Data Points Enterprises, LLC's Acquisition of Equity Ownership in Exchange for Payment**

53. The Debtor requires funds to operate its business effectively.

54. Data Enterprises, LLC desires to tender $100,000 (the "Payment") to the Debtor for acquisition of 74.5% equity of the Debtor from Oleg Azizov who currently owns 99.5% of the Debtor's shares. Jacob Hammerman owns .5% of the Debtor. The Payment will be for working capital and does not require repayment, security, or other remuneration.

**H. Motion Authorizing Use of Cash Collateral**

55. The Debtor seeks an order authorizing the interim and final use of the SBA's Cash Collateral and submits that the SBA will be adequately protected by, among other things, receiving

payments and retaining its liens under Section 361 of the Bankruptcy Code. The SBA will receive adequate protection payments throughout the course of the bankruptcy and its debt shall be restructured through a plan of reorganization. Cash Collateral would be used solely in accordance with the budget to be provided with the Cash Collateral motion. There is one other alleged secured creditor, i.e., Mr. Samuel Nebenzahl. The Debtor is still conducting due diligence regarding the perfection of Mr. Nebenzahl's security interest. Upon initial review of Mr. Nebenzahl's UCC-1, it appears that the description of the collateral is inadequate, and Mr. Nebenzahl is unsecured.

56. Without the use of cash collateral, the Debtor will be unable to fund essential payments.

Pursuant to 28 U.S.C. § 1746, I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*/s/ Oleg Azizov*
OLEG AZIZOV

Dated: May 23, 2024

4869-9496-4161, v. 1