**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Second Floor
Roseland, New Jersey 07068
(973) 622-1800
Anthony Sodono, III (asodono@msbnj.com)
Sari B. Placona (splacona@msbnj.com)
*Counsel for 703 Bakery Corp.,*
*Subchapter V Chapter 11 Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| 703 BAKERY CORP., | Case No. 24-15150 (VFP) |
| Debtor. | |

**DEBTOR'S COMBINED FIRST AMENDED PLAN OF**
**REORGANIZATION AND DISCLOSURE STATEMENT**

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of 703 Bakery Corp., and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY ~~OCTOBER~~NOVEMBER _____, 2024.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY NOVEMBER~~OCTOBER~~ _____, 2024. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: ANTHONY SODONO, III ESQ., AND SARI B. PLACONA, ESQ., AT MCMANIMON, SCOTLAND & BAUMANN, LLC, 75 LIVINGSTON AVENUE, SECOND FLOOR, ROSELAND, NEW JERSEY 07068.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, 2024 AT 11:00 A.M. IN COURTROOM No. 3B[1] AT UNITED STATES**

---

[1] Parties may appear telephonically through CourtSolutions in lieu of in-person participation.

**BANKRUPTCY COURT, DISTRICT OF NEW JERSEY, 50 WALNUT STREET, 3RD FLOOR, NEWARK, NEW JERSEY 07102.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Date: ~~September 27~~October 2~~2~~3, 2024

**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, NJ 07068
(973) 622-1800
Anthony Sodono, III, Esq. (asodono@msbnj.com)
Sari B. Placona, Esq. (splacona@msbnj.com)
*Counsel for 703 Bakery Corp.,*
*Subchapter V Chapter 11 Debtor and Debtor-in-Possession*

4861-3697-8930, v. 14861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1

## TABLE OF CONTENTS

**PAGE**

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ................................................. 1

ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR ................................... 4

    1.1.    Filing of the Debtor's Chapter 11 Case. ............................................................................. 4

    1.2.    Nature of the Debtor's Business. ......................................................................................... 4

    1.3.    History of Business Operations of the Debtor ..................................................................... 4

    1.4.    Legal Structure and Ownership. .......................................................................................... 4

    1.5.    Debtor's Assets. .................................................................................................................... 5

    1.6.    Debtor's Liabilities. .............................................................................................................. 5

    1.7.    Current and Historical Financial Conditions. ...................................................................... 6

    1.8.    Events Leading to the Filing of the Bankruptcy Case. ........................................................ 6

    1.9.    Significant Events During the Bankruptcy Case. ................................................................ 6

    1.10.    Projected Recovery of Avoidable Transfers ....................................................................... 98

ARTICLE 2: THE PLAN. .......................................................................................................................... 98

    2.1.    Unclassified Claims. ............................................................................................................. 9

    A.    Administrative Expenses ...................................................................................................... 109

    B.    Priority Tax Claims. ............................................................................................................. 1110

    2.2.    Classes of Claims and Equity Interests. ............................................................................... 1210

    A.    Classes of Secured Claims. ................................................................................................... 1210

    B.    Classes of Priority Unsecured Claims. ................................................................................. 1412

    C.    Class of Equity Interest Holders. .......................................................................................... 1512

    2.3.    Estimated Number and Amount of Claims Objections. ....................................................... 1513

    2.4.    Treatment of Executory Contracts and Unexpired Leases. .................................................. 1513

    2.5.    Means for Implementation of the Plan. ................................................................................ 1614

    2.6.    Payments. .............................................................................................................................. 1714

    2.7.    Post-Confirmation Management. .......................................................................................... 1715

    2.8.    Tax Consequences of the Plan. ............................................................................................. 1715

    2.9.    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan...... 1815

ARTICLE 3: FEASIBILITY OF PLAN. .................................................................................................... 1815

    3.1.    Ability to Initially Fund Plan. ............................................................................................... 1815

    3.2.    Ability to Make Future Plan Payments and Operate Without Further Reorganization. .......... 1815

ARTICLE 4: LIQUIDATION ANALYSIS ................................................................................................ 1916

ARTICLE 5: DISCHARGE. ....................................................................................................................... 2017

ARTICLE 6: GENERAL PROVISIONS. ................................................................................................... 2017

    6.1.    Title to Assets. ...................................................................................................................... 2017

6.2.    Binding Effect...................................................................................................2017

6.3.    Severability..........................................................................................................2017

6.4.    Retention of Jurisdiction by the Bankruptcy Court. ...........................................2118

6.5.    Captions. ..............................................................................................................2118

6.6.    Modification of Plan. ...........................................................................................2118

6.7.    Final Decree.........................................................................................................2118

ARTICLE 7: ATTACHMENTS. ....................................................................................2118

ARTICLE 8: FREQUENTLY ASKED QUESTIONS. ...................................................2219

ARTICLE 9: DEFINITIONS............................................................................................20

4861-3697-8930, v. 14861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

*703 Bakery Corp.* (the "Debtor" or "703"), is the Debtor and Debtor-in-Possession in the instant Chapter 11, Subchapter V bankruptcy case.  On May 21, 2024, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 Subchapter V petition under the United States Bankruptcy Code, 11 U.S.C. § 101, et seq.  Chapter 11 of the Bankruptcy Code allows the Debtor to propose a plan of reorganization.

The plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  This is a reorganizing plan ("Plan").

On August 30, 2020, pursuant to a U.S. Small Business Administration ("SBA") Loan Authorization and Agreement dated August 30, 2020, Debtor borrowed $36,700.00. In connection with the SBA Loan, the Debtor executed a Security Agreement. The SBA recorded a UCC-1 lien. On February 19, 2022, the Debtor executed and delivered to SBA an Amended Loan Agreement, through the Disaster Loan Application, in the principal amount of $146,500.00. The Debtor executed an Amended Security Agreement, which granted the SBA a security interest in and to certain goods, including, but not limited to, inventory, equipment, fixtures, instruments, documents, accounts, chattel paper, deposit accounts, letter of creditor rights, investment property, general intangibles and proceeds thereof. As of the Petition Date, there remained due and owing to the SBA under the SBA Loan of approximately $135,000.00. On May 28, 2024, the SBA filed its proof of claim in the amount of $146,552.03 (the "SBA Claim"). See Claim 2.  The SBA Claim's $135,000.00 shall be amortized over thirty (30) years at 3% interest.  The monthly payment is $617.87569 monthly.  The SBA holds a secured claim on all of the Debtor's assets but for purchase money security interest creditors.

Pursuant to the Final Order Authorizing Use of Cash Collateral, the Debtor ensured the SBA will be adequately protected during the pendency of the bankruptcy case. ECF 107.

On January 11, 2024, 703 entered into a Loan Agreement with Square Financial Services Inc. ("Square") for 703 Bryant Park Location. In the Agreement, 703 borrowed $148,233.00 at a repayment rate of 20%. Upon information and belief, Square has a secured interest in (a) all Square Accounts, Receivables, and all balances in all Square Accounts; (b) all accounts, chattel paper, commercial tort claims, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, letters of credit and money, however, after the purchase money security interest liens on the assets at the 703 Bryant Park location , there is no value in the Square's collateral. Thus, Square's claim is unsecured.

703 accrued between $300,000 and $400,000 in debt from Rossman Fruit & Vegetables Dist. Inc. ("Rossman"), a Perishable Agricultural Commodities Act ("PACA") licensed organization. Rossman, however, has not established a viable PACA claim under the law.  Thus, Rossman holds an unsecured claim.

Upon information and belief, on January 31, 2020, 703 borrowed $190,000 from Share Zion Catering, LLC to purchase equipment from Direct Kitchen Equipment with a 61-month lease term.

1

Upon information and belief, on June 1, 2022, 703 borrowed $82,510.06 from Targeted Lending Co., LLC ("Targeted Lending") for kitchen equipment with a 60-month term at a rate of $2,095.00 per month. On or about October 18, 2024, Targeted and the Debtor entered into a Consent Order Resolving Motion for Relief from the Automatic Stay for Adequate Protection Payments (the "Consent Order") (ECF 173). The Consent Order indicates the Debtor will make monthly adequate protection payments of $2,000 to Targeted Lending beginning on October 15, 2024 and continuing each month thereafter.

Upon information and belief, on June 2, 2022, 703 borrowed $149,080.75 from Banclease Acceptance Corp. for kitchen equipment with a 60-month term at a rate of $3,114.83 per month.

Upon information and belief, on July 5, 2022, 703 borrowed $55,000 from Citizens Capital for equipment purchased from Direct Kitchen Equipment with a 60-month term. The Debtor's plan shall provide for payment to the equipment financiers the "value" of such equipment over five (5) years at 7%.

Upon information and belief, 703 entered into an Equipment Finance Agreement with m2 Equipment Finance LLC for $83,180.50 to purchase a walk-in refrigerator and walk-in freezer from Direct Kitchen Equipment at a rate of $1,764.37 per month with a 60-month loan term. The Debtor's plan shall provide for payment to the equipment financiers the "value" of such equipment over five (5) years at 7%.

Upon information and belief, on July 26, 2022, 703 leased a gas oven from Direct Kitchen Equipment for $30,000 with a 60-month lease term That same day, 703 completed an Equipment Financing Agreement with Citizens Capital at a rate of $1,295 per month with a 60-month lease term. Upon information and belief, on August 3, 2022, 703 borrowed $70,768.75 from Centra Funding, LLC to purchase a walk-in freezer from Direct Kitchen Equipment.

Upon information and belief, on August 9, 2022, 703 Bakery signed a Lease Addendum with Pawnee Leasing Corporation as part of the Lease Agreement 703 made on July 5, 2022, for $30,000 for~~in~~ equipment to be paid $840.74 a month with a 60-month lease term.

Upon information and belief, on August 18, 2022, 703 entered into a lease Commercial Funding Partners, LLC with a 60-month ~~lease~~ term.~~ to purchase~~

Upon information and belief, on or around September 16, 2022, 703 leased two used Wishek Dibas 64 Blue Baking Bake Bread Ovens and a pan washer from Envision Capital Group LLC for $108,657.25 with a 60-month lease term at a rate of $2,434.92 per month.

Upon information and belief, on August 21, 2022, 703 signed an Equipment Finance Agreement with Regents Capital Corporation to purchase a ~~cover the expenses of the~~ Wiesheu Dibas 64 Blue Baking Bread oven, pan washer, and tax for $108,657.25.

Upon information and belief, on October 1, 2022, 703 entered into a lease in the amount of $290,250.31 from CFP New York, LP with a 60-month lease term kitchen equipment from Direct Kitchen Equipment.

2

Upon information and belief, on March 1, 2023, 703 entered into a~~n agreement~~ with First-Citizens Bank & Trust Company to purchase _a walk-in freezer and a walk-in refrigerator from Direct Kitchen Equipment with a 60-month lease term at a monthly rate of $2,539.97.

Upon information and belief, on May 3, 2024, 703 purchased equipment for $120,000 with a 60-month lease term from Commercial Funding Partners, LLC.

The Debtor's above listed creditors~~; hold~~ing alleged secured claims are wholly unsecured based on the lack of any value to secure such claims.  Thus, such creditors' claims shall be treated are general unsecured creditors.

The Debtor proposes to pay Class 13 Creditors (General Unsecured Creditors) quarterly dividends over sixty (60) months~~.  20 quarterly payments~~. The Debtor will allocate $60,000 per year ($15,000 per quarter) for five (5) years to Unsecured Creditors. ~~The Debtor will allocate $15,000 per quarter~~Such payments shall be a 10% distribution to claimants holding Allowed Unsecured Claims. ~~This may adjust after the Debtor expunges and/or reduces certain claims.~~ The Debtor reserves its rights to expunge and/or reduce claims. Class 13 payments shall commence with the quarter starting on the first day of the month which is thirty days (30) after an order confirming the plan becomes final and non-appealable.

The Debtor believes that this Plan is in the best interest of the creditors and that the Plan is fair and equitable. Otherwise, if the assets were liquidated, the unsecured creditors would not receive any payment since all assets are encumbered.

3

### ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1. Filing of the Debtor's Chapter 11 Case.**

On May 21, 2024 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary Chapter 11, Subchapter V petition under the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. ECF 1.

The Debtor is a corporation in New Jersey that continues to operate as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Code.

**1.2. Nature of the Debtor's Business.**

The Debtor is an artisan bakery and café ~~and~~that operates a manufacturing facility in Lyndhurst, New Jersey as well as retail stores in New York and New Jersey.

**1.3. History of Business Operations of the Debtor**

As mentioned in paragraph 1.2, the Debtor is an artisan bakery and café that operates a manufacturing facility and eight (8) retail stores. The Debtor has approximately 131 employees, 20 of which are employed on a part-time basis. The Debtor has eight operating stores in New Jersey and New York and one manufacturing facility in New Jersey. ~~located in New Jersey and New York. T~~The Debtor operates retail stores and a manufacturing facility ~~located~~ at the following locations:

     i.      676 Amsterdam Ave, NY, NY 10025 ("Amsterdam").
     ii.     The Arthouse Hotel at 2178 Broadway, NY, NY10024 ("Arthouse").
     iii.    1716 Avenue M, Brooklyn, NY 11230 ("1716 Avenue").
     iv.    44 West 37th Street, NY, NY 10018 ("Bryant Park").
     v.     266 Kingston Ave, Brooklyn, NY 11213 ("Crown Heights").
     vi.    1700 Madison Ave, Lakewood, NJ 08701 ("Lakewood").
     vii.   295 Burnside Ave, Lawrence, NY 11559 ("Lawrence").
     viii.  323 Ridge Rd, Lyndhurst, NJ 07071 ("Lyndhurst") – this is the manufacturing facility.
     ix.    439 Cedar Ln, Teaneck, NJ 07666 ("Teaneck").

The Debtor intends to reorganize through restructuring its debt to creditors in this Plan and seeking an equity infusion from a strategic partner for~~that can also infuse~~ working capital. Moreover, the Debtor seeks to open several more stores so that the manufacturing overhead can be spread over a larger number of stores and reduce costs. The goal is to ~~maximize~~pay ~~the distribution to~~ creditors in accordance with the Plan,~~and~~ maintain the Debtor's assets and business while retaining~~maintaining employment for~~ over 100 employees. With these strategic moves, the Debtor is well-positioned to regain its financial stability and continue towards a profitable-growth path, leveraging its strengths to service its customers effectively, and build a sustainable future.

**1.4. Legal Structure and Ownership.**

4

The Debtor is a corporation organized in New Jersey. Oleg Azizov ("Azizov") is the Debtor's President and Chief Executive Officer. As of the Petition Date, Azizov owneds 99.5% of the Debtor and. Jacob Hammerman owneds .5% of the Debtor. Pursuant to post-petition financing, order approving post-petition financing, Azizov now owns 59.5% of the Debtor, Jacob Hammerman owns .5% of the Debtor, and Natures Necessity LLC ("Natures") owns 40% of the Debtor. Ajay Sarin, the 100% owner of Natures, is now the Chief Financial Officer of the Debtor. ECF 169. Pursuant to the financing order, Mr. Sarin promised $450,000 in financing. He already provided $150,000 and the second installment is due on October 30, 2024.

### 1.5. Debtor's Assets.

The Debtor's assets are comprised of equipment and vehicles, deposits, inventory, office furniture and fixtures, receivables and cash. Its assets are fully set forth on the schedules and statement of financial affairs and the Debtor opines the assets have a value of approximately $392,178.82. The assets are fully encumbered by purchase money security interest lien holders or the SBA.

### 1.6. Debtor's Liabilities.

The Debtor's liabilities, total $4,448,045.39 as of June 24, 2024.

**The following claims are secured:**

### SBA Loan

On August 30, 2020, 703 executed and delivered to the U.S. Small Business Administration (the "SBA") a Loan Agreement in the principal amount of $36,700.00 (the "Loan"). The Loan further provides that interest shall be accrued on the Loan at a rate of 3.75% per annum, with monthly payments of principal and interest in the amount $179.00 commencing twelve (12) months from the date of promissory Note, and with all outstanding principal and interest due and owing on a maturity date of thirty (30) years from the date of the promissory Note.

On February 19, 2022, 703 executed and delivered to the SBA an Amended Loan Agreement, through the Disaster Loan Application, in the principal amount of $146,500.00. The Loan further provides that interest shall be accrued on the Loan at a rate of 3.75% per annum, with monthly payments of principal and interest in the amount $741.00 commencing twenty-four (24) months from the date of promissory Note, and with all outstanding principal and interest due and owing on a maturity date of thirty (30) years from the date of the Note.

To secure the obligations evidenced by the Loan Agreement, 703 granted the SBA a security interest in and to certain goods, including, but not limited to, inventory, equipment, fixtures, instruments, documents, accounts, chattel paper, deposit accounts, letter of credit rights, investment property, general intangibles, and the proceeds thereof. As of the Petition Date, there remains due and owing to the SBA under the Loan the approximate amount of $135,000. On May 28, 2024, the SBA filed its proof of claim in the amount of $146,552.03. See Claim 2. Upon

information and belief, the value of the Debtor's collateral fully secures the SBA's lien subject to due diligence on Samuel Nebenzahl's claim (which he alleges is a valid secured claim – the Debtor is still conducting due diligence on such claim).

**Nebenzahl, Samuel**

Debtor owes Nebenzahl, Samuel ("Nebenzahl") an unknown amount on a blanket lien on Debtor's assets. Nebenzahl's UCC-1 description of collateral is inadequate, and thus he is unsecured. The Debtor shall file a motion to expunge the claim.

**Gift Cards**

Pre-petition Debtor has sold approximately 21,000 gift cards with a ~~current outstanding~~ balance of $851,000. This has been reduced substantially. The Debtor intends to allow the purchasers of such cards to continue to use the cards post-petition to maintain customer confidence.

### 1.7. Current and Historical Financial Conditions.

Since filing for bankruptcy, the Debtor has taken steps to reorganize its finances and minimize expenses to emerge from bankruptcy.

### 1.8. Events Leading to the Filing of the Bankruptcy Case.

The Debtor's financial issues stem from the liabilities set forth in section 1.6, which arose, in part, to the legacy debt accrued during the Covid pandemic. In addition, the Debtor has certain leases and finance agreements with certain vehicle and equipment lenders. Debtor owes certain vendors, banks, line of credits and credit cards debts. Ultimately, Debtor filed for the voluntary Chapter 11 petition to stave off an eviction proceeding at the Times Square location. Unfortunately, the Debtor was unable to keep the Times Square location and turned it over to the landlord.

### 1.9. Significant Events During the Bankruptcy Case.

The Debtor filed its voluntary Chapter 11 petition on the Petition Date.

The following is a chronological list of significant events which have occurred during this case:

On the Petition Date, the Debtor filed for protection under Subchapter V, Chapter 11 of the Code. Docket No. 1.

The Debtor filed the following motions (collectively, the "First Day Motions"):

    a.   Moton for Authority to Continue to Use Existing Bank Accounts and Business Forms. ECF 6.

4861-3697-8930, v. 14861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1

b. Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b). ECF 7.

c. Motion to Use Cash Collateral. ECF 8.

d. Motion for an Order Authorizing Debtor to Continue Credit Card Facilities. ECF 9.

e. Motion for an interim and final order (I) authorizing the Debtor to (A) pay prepetition wages and related obligations; (B) pay and remit payroll taxes and other deductions to third parties; and (II) authorizing and directing all banks to honor checks and transfers for payment of prepetition employee obligations. ECF 10.

f. Motion Authorizing the Debtor to Maintain and Administer its Existing Customer Program and Honor Certain Prepetition Obligations. ECF 11.

g. Motion authorizing Data Points Enterprise, LLC's acquisition of equity ownership in exchange for payment to fund operations and granting related relief, this motion was ultimately withdrawn. ECF 12.

h. Motion authorizing Cogent Waste Solutions LLC, Interstate Waste Services, Inc., Express Recycling and Sanitation, Industrial Carting and Waste Connections of New York Inc as critical vendors pursuant to 11 U.S.C. 105(a) *nunc pro tunc*. ECF 13.

On May 22, 2024, the Debtor filed an Application for Retention of Professional McManimon, Scotland & Baumann, LLC ("MSB") as Attorneys (the "MSB Retention"). ECF 4. On June 12, 2024, the Court entered an Order granting the MSB Retention. ECF 68.

On May 24, 2024, Mark Politan was appointed as the Subchapter V, Chapter 11 Trustee. ECF 16.

On May 30, 2024, the Court entered an order authorizing the Debtor to continue using existing bank accounts and business forms. ECF 40.

On May 30, 2024, the Court entered an interim order (i) prohibiting utility companies from discontinuing, altering or refusing service, (ii) deeming utility companies to have adequate assurance, and (iii) establishing procedures for resolving requests for additional assurance pursuant to 11 U.S.C. §§ 105(a) and 366. ECF 41.

On May 30, 2024, the Court entered an interim order authorizing the Debtor's use of cash collateral. ECF 42. The Debtor is required to make adequate protection payments to the SBA in the monthly amount of $741.

On May 30, 2024, the Court entered an order directing payment credit card processor to honor the processing agreement with the Debtor pending assumption or rejection under 11 U.S.C. §§ 365 and 105(a). ECF 43.

On May 30, 2024, the Court entered an interim order (i) authorizing the Debtor to (A) pay prepetition wages and related obligations; (B) pay and remit payroll taxes and other deductions to

7

third parties; and (ii) authorizing and directing all banks to honor checks and transfers for payment of prepetition employee obligations. ECF 44.

On May 30, 2024, the Court entered an order authorizing the Debtor to maintain and administer its existing customer program and honor certain prepetition obligations. ECF 45.

On May 31, 2024, the Court entered an order designating (i) Cogent Waste Solutions LLC and Interstate Waste Services, Inc as critical vendors pursuant to 11 U.S.C. § 105(a), and (ii) authorizing but not directing payment to such critical vendors. ECF 48.

On June 10, 2024, the Court entered an order granting application to employ Vestcorp, LLC as accountant. ECF 66.

On July 16, 2024, the Court entered an order authorizing Debtor to continue using existing bank accounts and business forms. ECF 88.

On July 16, 2024, the Court entered Final Order (i) authorizing the Debtor to (a) pay prepetition wages and related obligations, (b) pay and remit payroll taxes and other deductions to third parties, and (ii) authorizing and directing all banks to honor checks and transfers for payment of prepetition employee obligations. ECF 89.

On July 16, 2024, the Court entered Final order (i) prohibiting utility companies from discontinuing, altering, or refusing service, (ii) deeming utility companies to have adequate assurance of payment, and (iii) establishing procedures for resolving requests for additional assurance pursuant to 11 U.S.C. §§ 105(a) and 366. ECF 90.

On July 18, 2024, the Court entered Final Order Authorizing Debtors Use of Cash Collateral. ECF 107.

On July 26, 2024, DRLR Investments LLC ("DRLR") filed a Motion for Entry of An Order (I) Determining the Debtor is Ineligible for Subchapter V Relief and (II) Granting Related Relief. ECF 117.  The Debtor and DRLR are negotiating a ~~have been discussing a~~ resolution.

On July 29, 2024, the Court entered an Order Authorizing the Debtor to (I) Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364(b) and (II) Related Relief (the "DIP Funding Order"). ECF 119. The DIP Funding Order authorized DM Brands, LLC ("DM Brands") to provide the Debtor with financing in the amount of $400,000. Unfortunately, DM Brands only funded $150,000 to the Debtor. The Debtor obtained ~~is seeking~~ an alternative funding source discussed herein..

On October 10, 2024, the Court entered a second Order Authorizing Subchapter V, Chapter 11 Debtor to (I) Obtain Post-Petition Funding pursuant to 11 U.S.C. § 364(b); (II) Terminate DIP Funding with DM Brands and Reimburse DM Brands Certain Funds Advanced; and (III) Related Relief (the "Second DIP Funding Order"). ECF 169. The Second DIP Funding Order was necessary because DM Brands failed to comply with its agreement with the Debtor and only funded $150,000 of the promised $400,000. In addition, DM Brands was nonresponsive to

Debtor's requests to provide the additional $250,000. DM Brands delay in providing the entire $400,000 had a negative effect on the Debtor's operations, i.e., inability to meet post-petition obligations.

The Second DIP Funding Order authorized Natures[2] to provide the Debtor financing in the amount of $450,000. Natures provided the Debtor with said financing in exchange for the Debtor's principal, Azizov, granting Natures 40% equity interest in the Debtor. $400,000 of Natures's funding is allocated to the Debtor for the payment of post-petition expenses. $50,000 of Natures's financing will remain with MSB for professional fees. In addition to Natures financing of $450,000, Natures agreed to pay Azizov $60,000 for past due wages. over a duration of six (6) months. Ajay Sarin, the 100% owner of Natures, became the Chief Financial Officer of the Debtor upon approval of the Second DIP Funding Order. Azizov remains the President and Chief Executive Officer of the Debtor. Moreover, DM Brands will be reimbursed $150,000 from Natures. Lastly, DM Brands and the Debtor agreed to release any and all claims between them pursuant to the Second DIP Funding Order.

### 1.10.    Projected Recovery of Avoidable Transfers

The Debtor is analyzing its books and records to determine if there are any avoidable transfers to recover.

## ARTICLE 2: THE PLAN.

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class or purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

### 2.1. Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

---

[2] Natures is defined in section 1.4 of the Debtor's Combined First Amended Plan of Reorganization and Disclosure Statement.

4861-3697-8930, v. 14861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1

As such, the Plan does not place the following Claims in any class:

### A. *Administrative Expenses*

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.      If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.      If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.      Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses,[3] and their proposed treatment under the Plan:

---

[3] E.O.M. Realty NY Corp filed a claim seeking administrative expense for unpaid post-petition rent. Claim 71. The Debtor disputes this amount and reserves the right to file a motion to expunge and/or reduce such claim.

4861-3697-8930, v. 14861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| McManimon, Scotland & Baumann, LLC | $120,000[4] | Payment in full on Effective Date, or through other agreement | Administrative |
| Vestcorp, LLC | $12,000 | Payment in full on Effective Date, or through other agreement | Administrative |
| Mark Politan Sub V Trustee | $7,760.68[5] | Payment in full on Effective Date, or through other agreement | Administrative |
| 750 8th Avenue LLC | $123,281.83[6] | Payment in full over five (5) years , or through other agreement | Administrative |
| **APPROXIMATE TOTAL** | ~~$139,760.68~~ $263,042.51 **(estimated)** | | |

### B. *Priority Tax Claims.*

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

New York State Department of Tax and Finance filed a claim in the amount $42,234 (the "NY Tax Claim"). Claim 3. The NY Tax Claim shall be paid over five years in monthly payments of $703.90.

New York State Department of Labor filed a claim in the amount of $120.60 (the "DOL Claim"). Claim 56. The DOL Claim shall be paid upon confirmation of the plan.

New York State Department of Tax and Finance filed a claim in the amount of $30,934.11 (the "NYS Claim"). Claim 74.  The NYS Claim alleges it is owed priority ~~the~~ sales tax ~~is priority under~~ 11 U.S.C. 507(a)(8). The NYS Claim shall be paid over sixty months at $515 monthly.

---

[4] Fees are estimated through August 2024. MSB holds a retainer of $23,207 will be applied to the fees and costs upon order of the court. The Debtor shall pay MSB upon confirmation or agreed upon arrangement.
[5] Court order entered on September 24, 2024.  The Sub V Trustee is holding a $5,000 retainer.
[6] The Debtor and 750 8th Avenue LLC have agreed on this amount as an administrative expense, for payment of pre- and post-petition arrears to 750 8th Avenue LLC to satisfy the Order entered by the Court granting 750 8th Avenue LLC an allowed administrative claim for unpaid rent on July 16, 2024. ECF 91.

4861-3697-8930, v. 1 4861-3697-8930, v. 1 4871-2669-6170, v. 1 4883-8150-8842, v. 1

State of New Jersey – Division of Taxation filed a claim in the amount of $348,350.79 (the "NJ Claim"). Claim 75.  The Debtor believes the NJ Claim is overstated. The NJ Claim alleges $336,060.28 is priority under 11 U.S.C. 507(a)(8).  The Debtor disputes this and file a motion to expunge and/or reduce the claim.

**2.2. Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A.  *Classes of Secured Claims*

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

Secured creditors in bankruptcy often face the prospect of recovering less than the full value of their claims against a debtor.  This frequently arises when the creditor's collateral is worth less than the amount of its claim, thus, it is either an "undersecured claim" or if there is no value in the collateral securing the claim, the creditor holds an "unsecured" claim.  Undersecured claims are bifurcated into two separate claims: (1) a secured claim for the value of the collateral, and (2) an unsecured claim for the remainder of the creditor's claim.  Secured claims are typically paid in full, while unsecured creditors often receive less than the amount owed.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|-------|-------------|----------------|----------------|-------------|-----------|
| 1 | SBA Loan | N | Y | $1~~46~~35,55~~20~~ ~~00.03~~0 per claim filed (Claim 2) | The SBA's $1~~35,000.00~~ 46,552.03 shall be amortized over thirty (30) years at 3% interest.  The monthly payment is $617.87~~569~~ monthly. |
| 2 | First Citizens Bank | N | Y | $120,944.36 per claim filed (Claim 1) | Payment of value of collateral over five years at 7% interest. |

4861-3697-8930, v. 1~~4861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1~~

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|---|---|---|---|---|---|
| 3 | Tokyo Century Inc. | N | Y | $76,650.00[7] per claim filed (Claim 25) | Payment of value of collateral over five years at 7% interest. |
| 4 | Channel Partners Capital, LLC | N | Y | $10,000.00[8] per claim filed (Claim 44) | Payment of value of collateral over five years at 7% interest. |
| 5 | Huntington National Bank | N | Y | $102,061.64 per claim filed (Claim 45) | Payment of value of collateral over five years at 7% interest. |
| 6 | Targeted Lending Co., LLC | N | Y | $24,000.00[9] per claim filed (Claim 48) | Payment of value of collateral over five years at 7% interest. |
| 7 | M2 Equipment Finance, LLC | N | Y | $147,043.84 per claim filed (Claim 49) | Payment of value of collateral over five years at 7% interest. |
| 8 | Milestone Bank FKA LCA Bank | N | Y | $126,924.99 per claim filed (Claim 53) | Payment of value of collateral over five years at 7% interest. |
| 9 | Balboa Capital[10] | N | Y | $141,197.00[11] | Payment ~~of value of collateral~~ over ~~five~~ thirty (30) years ~~, at 7% interest~~. |
| 10 | Centra Funding, LLC | N | Y | $118,300.00[12] per claim filed (Claim 65) | Payment of value of collateral over five years at 7% interest. |

<hr>

[7] Claim filed in the amount of $79,191.32. Claim 25.
[8] Claim filed in the amount of $65,066.15. Claim 44.
[9] Claim filed in the amount of $78,083.55. Claim 48.
[10] On October 11, 2024, Balboa Capital Corporation ("Balboa"), by and through its counsel Becker, LLC, filed its Notice of Election Pursuant to 11 U.S.C. § 1111(b)(2). ECF 170.
[11] Balboa filed its claim in the amount of $154,547.54 alleging $141,197 to be secured and $13,350.54 as unsecured.
[12] Claim filed in the amount of $176,281.90. See Claim 65.

4861-3697-8930, v. 1~~4861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1~~

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT OWED | TREATMENT |
|-------|-------------|----------------|----------------|-------------|-----------|
| 11 | CFP New York, LP | N | Y | $116,053.28 per claim filed (Claim 67) | Payment of value of collateral over five years at 7% interest. |
| 12 | First Utah Bank | N | Y | $248,783.73 per claim filed (Claim 70) | Payment of value of collateral over five years at 7% interest. |

### B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

AJH Management, LLC filed a claim in the amount of $51,652.37 (the "AJH Claim") for lease of property located at 1700 Madison Avenue. Claim 73. The AJH Claim alleges $3,350 is priority status. The priority part of the AJH Claim shall be paid over five years in monthly amounts of $55.83.

### Class of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 2, which contains general unsecured Claims against the Debtor:

14

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 13 | General Unsecured Class<br><br>Total amount of claims = ($4,124,812.39)[13] (this amount is subject to objection and reclassification,) | Y | Pro rata payment in q~~Q~~uarterly dividends over sixty (60) months – ~~20 quarterly payments~~$60,000 per year for five (5) year. Such payments shall be $15,000 per quarter~~10%~~. |

### C. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.,* equity interest) in a debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Since the Debtor is a corporation, entities holding preferred or common stock are Equity Interest holders.  The Debtor's membership interests are, (1) Oleg Azizov ~~owned~~ owns 59.5%~~99.5%~~ of Debtor, ~~and~~ (2) Jacob Hammerman ~~owned~~ owns .5% of the Debtor, and (3) Natures owns 40% of the Debtor pursuant to the Second DIP Funding Order.  All the equity holders shall retain their Equity Interest.

The Plan provides for all the Debtor's assets to revest in the Debtor.

### 2.3. Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If a claim is disputed, once such claim is adjudicated by the court, it will be disallowed, allowed, reclassified or reduced.  An Allowed Claim will be paid in accordance with the Plan.

### 2.4. Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e., accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

---

[13] As scheduled on the filed missing document(s). See ECF 78.

4861-3697-8930, v. 1~~4861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1~~

[ X] Assumption of Executory Contracts.

The Executory Contracts shown on Exhibit B shall be assumed by the Debtor.

Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.  Exhibit B also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[ ] Assumption and Assignment of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit __ shall be assumed by the Debtor and assigned to the party listed in that Exhibit. Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

If you object to the assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[  ] Rejection of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit B shall be rejected by the Debtor.

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases, not expressly shown on Exhibit B, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed. The Debtor has leases for the premises it operates out of and for vehicles it operates for the business.

**2.5. Means for Implementation of the Plan.**

The Plan will be funded by the Debtor's continued monthly income from operations. The Debtor may also~~also is~~ seek~~ing~~ an equity infusion from a potential partner. There shall be no prepayment penalty for any priority, administrative or Class of claims referenced above. The Debtor also anticipates ~~to~~ increasing~~e~~ its marketing campaign, advertising and promotional deals. Furthermore, the Debtor intends on opening two (2) additional stores in Englewood, New Jersey and at 1311 Lexington Avenue, New York, New York. Opening additional stores and using the same manufacturing facility lowers overhead (per store) while increasing sales. If there is a shortfall on payments to creditors, Mr. Sarin has agreed to~~-~~ infuse additional capital.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.

The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

### 2.6. Payments.

The Reorganized Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Reorganized Debtor shall serve without bond and shall receive no remuneration for serving as the disbursing agent.

Any distribution of less than $20.00 will be considered *de minimis,* and Holders of Allowed Claims that are entitled to an interim or final distribution of $20.00 or less will not receive any distribution. Such funds will remain with and revest in the Reorganized Debtor.

Except as otherwise provided in the Plan, any distribution under the Plan which is unclaimed after three (3) months following any distribution date shall be forfeited, and such distribution, together with any interest earned thereon, shall return to and revest in the Reorganized Debtor.

### 2.7. Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows: The Debtor will continue to be operated by Oleg Azizov and Ajay Sarin.

### 2.8. Tax Consequences of the Plan.

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to Debtor. The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences that the Plan will have on the Debtor's tax liability: None anticipated.

**2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

~~Debtor will supplement this disclosure statement/plan to provide projected financial information.~~ Attached as Exhibit  D  are projections prepared by Debtor's accountant.  The projections are not based on audited financials.

## ARTICLE 3: FEASIBILITY OF PLAN.

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1. Ability to Initially Fund Plan.**

The Debtor believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The Debtor will provide a Certification of Funds on Hand before the confirmation hearing.

**3.2. Ability to Make Future Plan Payments and Operate Without Further Reorganization.**

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor as is necessary for the execution of the Plan.

The Debtor's financial projections show that the Debtor will have enough funds to pay its plan payments and operating expenses. ~~an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of approximately $_____.~~ The final Plan payment is expected to be paid five years following the initial payment under the Plan.

The Debtor believes that the Plan is feasible.  There are two aspects of a feasibility analysis. The first aspect considers whether Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date.  The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments.

The Debtor maintains that the first aspect of feasibility is satisfied as illustrated here, based upon the value of the Debtor's assets and cashflow of the business.  This second aspect of the feasibility requirement is met since the Debtor is offering to satisfy ~~unsecured~~ creditors through payments spanned over five (5) years.  Moreover, payments will be made from the Debtor's continued sources of income.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

~~4861-3697-8930, v. 1~~~~4861-3697-8930, v. 1~~~~4871-2669-6170, v. 1~~4883-8150-8842, v. 1

## ARTICLE 4: LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached ~~hereto~~ as Exhibit C~~D~~.

~~4861-3697-8930, v. 1~~4861-3697-8930, v. 1~~4871-2669-6~~170, v. 1~~4883-8150-8~~842, v. 1

# ARTICLE 5: DISCHARGE.

**5.1. Discharge**.

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

> (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

> (2) if applicable, of the kind specified in section 523(a) of this title.

# ARTICLE 6: GENERAL PROVISIONS.

**6.1. Title to Assets.**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

**6.2. Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**6.3. Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

4861-3697-8930, v. 14861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1

**6.4. Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5. Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6. Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a), on notice to all parties in interest.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7. Final Decree.**

Once the estate has been substantially consummated provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7: ATTACHMENTS.

The following documents accompany the Plan:

[ ]     Debtor's Assets at Fair Market Value, annexed as Exhibit ___.

[ ]     Debtor's Liabilities, annexed as Exhibit ___.

[x ]     Financial forecast for the Debtor, annexed as Exhibit D .

21

[ ]    Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit ___.

[X]    Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit A.

[ ]    Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.

[ ]    Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit .

[ ]    Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___.

[ ]    Executory Contracts and Unexpired Leases to be Rejected, annexed as ____

[ ]    Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit ___.

[ x]    Liquidation Analysis, annexed as Exhibit _C—.

## ARTICLE 8: FREQUENTLY ASKED QUESTIONS.

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. [Paragraph/Section] lists all classes of claimants and their types of claims.

4861-3697-8930, v. 14861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.2 of the Plan identifies the classes of creditors whose claims are impaired.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____. Ballots should be mailed to the following address: ANTHONY SODONO, III, ESQ., AND SARI B. PLACONA, ESQ., MCMANIMON, SCOTLAND & BAUMANN, LLC, 75 LIVINGSTON AVENUE, SECOND FLOOR, ROSELAND, NEW JERSEY 07068.

**How Do I Determine When and How Much I Will Be Paid?** In Section 2.2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9: DEFINITIONS.

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are the convenience of reference only and are superseded by the definitions found in the Code.

**9.2.** **Administrative Claimant:** Any person entitled to payment of an Administration Expense.

**9.3.** **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

4861-3697-8930, v. 14861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1

**9.4.**    **Administrative Expense:** Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5.**    **Administrative Tax Claim:** Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.**    **Allowed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim is either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.**    **Allowed Priority Tax Claim:** A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.**    **Allowed Secured Claim:** Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9.**    **Allowed Unsecured Claim:** An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.**    **Bankruptcy Code or Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.**    **Bankruptcy Court:** The United States Bankruptcy Court for the District of New Jersey.

**9.12.**    **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**9.13.**    **Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.**    **Chapter 11 Case:** This case under chapter 11 of the Bankruptcy Code in which 703 Bakery Corp., is the Debtor-in-Possession.

**9.15.**    **Claim:** Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

24

undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class:** A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.    Confirmation Hearing:** The hearing to be held on ____, 2024 at 11:00 a.m. to consider confirmation of the Plan.

**9.20.    Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor:** Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession:** 703 Bakery Corp., the debtor-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date:** Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.    Equity Interest:** An ownership interest in the Debtor.

**9.27.    Executory Contracts:** All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

4861-3697-8930, v. 14861-3697-8930, v. 14871-2669-6170, v. 14883-8150-8842, v. 1

**9.29.    IRC:** The Internal Revenue Code.

**9.30.    Petition Date:** May 21, 2024, the date the original chapter 11 bankruptcy case was filed.

**9.31.    Plan:** This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtor:** The Debtor after the Effective Date.

**9.34.    Schedules:** Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.    Secured Creditor:** Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.    Trustee:** The trustee to be appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.    Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

**McMANIMON, SCOTLAND
 & BAUMANN, LLC**
*Counsel for 703 Bakery Corp.,
Chapter 11 Debtor and Debtor-in-Possession*

Dated: ~~September 27~~October 23, 2024                    By:    */s/ Anthony Sodono, III*

                                                            Anthony Sodono, III


                                                    By:    /s/ Oleg Azizov
                                                            Oleg Azizov

Dated:  ~~September 27~~October 23, 2024

26

**EXHIBIT A – Operating Report**

**EXHIBIT B - Cash on hand on the Effective Date**

Cash on hand on the Effective Date:                                $

Checking, savings, money market or brokerage accounts:

Less –

       Amount of Administrative Expenses
       payable on effective date of Plan                    $

       Amount of statutory costs and charges            $0.00

       Amount of cure payments for executory contracts    $0.00

       Other Plan Payments due on Effective Date        $

             Balance after paying these amounts……..    $

The sources of the cash the Debtor will have on hand by the Effective Date are estimated as follows:

       $      Cash in the Debtor's bank account now

       + $      Additional cash Debtor will accumulate from net earnings between now
             and Effective Date [state the basis for such projections]

       $      Total

**EXHIBIT C - Liquidation Analysis**

*Debtor's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. | Machinery, equipment, vehicles | $ |
| b. | Office furniture | $ |
| c. | Cash / financial assets | $ |
| d. | Security Deposit | $ |
| e. | Accounts Receivables | $ |
| f. | Other | $ |
| g. | Real Property | $0 |

**Less:  Secured Claims**

|  |  |
|---|---|
| . | $2,008,144.87[14] |
|  | $ |

**Less:**

| | |
|---|---|
| Chapter 11 Administrative Expenses | $263,042.51~~139,760.68~~ |

**Less:**

| | |
|---|---|
| Priority claims, excluding Administrative Expense claims | $ |
| (1) Balance for unsecured claims | $ |
| (2) Total dollar amount of unsecured claims | $4,124,812.39 |

***Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:***     %

***Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:***     %

---

[14] Subject to dispute.