| |
|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1(b) |
| **McMANIMON, SCOTLAND & BAUMANN, LLC**<br>75 Livingston Avenue, Second Floor<br>Roseland, New Jersey 07068<br>(973) 622-1800<br>Anthony Sodono, III (asodono@msbnj.com)<br>Sari B. Placona (splacona@msbnj.com)<br>*Counsel for 703 Bakery Corp., Subchapter V*<br>*Chapter 11 Debtor and Debtor-in-Possession* |

| | |
|---|---|
| In re:<br><br>703 BAKERY CORP.,<br><br>                              Debtor. | Chapter 11; Subchapter V<br><br>Case No. 24-15150 (VFP) |

**CERTIFICATION OF OLEG AZIZOV IN SUPPORT OF CONFIRMATION OF THE DEBTOR'S COMBINED FIRST AMENDED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT**

**OLEG AZIZOV**, of full age, pursuant to 28 U.S.C. § 1746, hereby certifies and declares as follows:

1. I am the President, Owner, and Chief Executive Officer of 703 Bakery Corp. (the "Debtor"). I am fully familiar with the Debtor's business and financial affairs, including the facts and circumstances set forth herein.

2. If I am called to testify as a witness in this matter, I would competently testify to each of the facts set forth herein.

3. I submit this certification (the "Certification") in support of the *Debtor's Combined First Amended Plan of Reorganization and Disclosure Statement* (the "Plan")[1] [ECF 178] pursuant to Sections 1191 and 1129 of Title 11 of the United States Code (the "Bankruptcy Code"). All

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

1

matters set forth in this Certification are based on (a) my personal knowledge, (b) my review of relevant documents, including the Plan, (c) my opinion, based on my personal experience and knowledge of the Debtor's business and financial condition, or (d) as to matters involving the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, my reliance on the advice of bankruptcy counsel. The references to section of the Bankruptcy Code in this Certification have been supplied by counsel to the Debtor in order to provide the context for the statements made herein.

## I.     BACKGROUND

4.     On May 21, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under the Bankruptcy Code. [ECF 1].

5.     The Debtor is an artisan bakery and café and operates a manufacturing facility in Lyndhurst, New Jersey as well as retail stores in New York and New Jersey.

6.     Mark Politan (the "Subchapter V Trustee") was appointed the Subchapter V Trustee of the Debtor's estate on May 24, 2024. [ECF 16].

7.     As of the Petition Date, I owned 99.5% of the stock of the Debtor and Jacob Hammerman owned .5% of the Debtor's stock. Pursuant to an order granting post-petition financing ("DIP Order"), among other things, the DIP Order reduced my stock ownership to 59.5% of the Debtor. Mr. Hammerman retained his .5% stock ownership and Natures Necessity LLC ("Natures") (Natures is the lender under the DIP Order) owns 40% of the stock of the Debtor. Ajay Sarin ("Sarin"), the 100% member of Natures, is now the Chief Financial Officer of the Debtor. [ECF 169].

8.     During the Debtor's Subchapter V bankruptcy case, the Debtor has complied with all requests by the Subchapter V Trustee and other parties in interest.

9. On October 23, 2024, the Debtor filed the Plan. Several objections have been filed and as set forth below, such objections have been satisfied.

## II. THE PLAN SATISFIES ALL REQUIREMENTS FOR CONFIRMATION

10. As more specifically set forth below, to the best of my knowledge and belief, and having reviewed the requirements for confirmation of the Plan with the Debtor's legal advisors, I believe: (i) the Plan complies with all applicable provisions of the Bankruptcy Code as required by Section 1129(a)(1) and 1191 of the Bankruptcy Code, including Sections 1122 and 1123, (ii) the discretionary provisions of the Plan are consistent with Section 1123(b) of the Bankruptcy Code, (iii) the Plan complies with Section 1129(a)(2) through 1129(a)(13) of the Bankruptcy Code, and (iv) the principal purpose of the Plan is not avoidance of taxes.

11. 11 U.S.C. § 1191(b) provides that, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (19), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

### A. Section 1129(a)(1) – Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

12. It is my understanding that the Plan satisfies Sections 1123(a)(1), 1122(a), 1122(b) and 1191 of the Bankruptcy Code. As required by Section 1122(a) of the Bankruptcy Code, each Class of Claims specified in the Plan contains only Claims that are substantially similar to the other Claims within that Class. Indeed, Article 2 of the Plan provides for the separate classification of Claims based on differences in the legal nature and/or priority of the Claims. Specifically, the Plan

3

designates thirteen (13) Classes of Claims.[2] Each of the Claims in each Class are substantially similar to the other Claims in such Class.

13. It is my understanding that the Plan also satisfies Section 1123 of the Bankruptcy Code:

a. Section 1123(a)(1) of the Bankruptcy Code: Article 2 of the Plan designates each Class of Claims, other than Claims of a kind specified in Section 507(a)(2), 507(a)(3) or 507(a)(8) of the Bankruptcy Code.

b. Section 1123(a)(2) of the Bankruptcy Code: Article 2 of the Plan identifies each Class of Claims that is not impaired under the Plan.

c. Section 1123(a)(3) of the Bankruptcy Code: Article 2 of the Plan sets forth the treatment of impaired Claims.

d. Section 1123(a)(4) of the Bankruptcy Code: The Plan uniformly provides for the same treatment of each Claim in a particular Class as the case may be unless the Holder of a particular Claim has agreed to less favorable treatment with respect to such Claim.

e. Section 1123(a)(5) of the Bankruptcy Code: Article 2 of the Plan provides adequate means for the Plan's implementation including the enumeration of the means for implementation of the Plan as required by Section 1123(a)(5).

f. Section 1123(a)(6) of the Bankruptcy Code: The Plan does not provide for the issuance of non-voting equity securities. Accordingly, Section 1123(a)(6) of the Bankruptcy Code is inapplicable.

---

[2] On October 11, 2024, creditor Balboa Capital Corporation ("Balboa"), by and through its counsel Becker, LLC, filed its Notice of Election Pursuant to 11 U.S.C. § 1111(b)(2). [ECF 170]. Balboa filed its claim in the amount of $154,547.54 alleging $141,197 to be secured and $13,350.54 as unsecured. Under §1111(b), Balboa's entire claim shall be treated as secured.

  g. Section 1123(a)(7) of the Bankruptcy Code: Pursuant to Subchapter V, new value is not required in order for the shareholders to retain their equity interests.

  **B.** **Section 1123(b) – Discretionary Contents of the Plan**

  14. It is my understanding that the discretionary provisions of the Plan comply with Section 1123(b) of the Bankruptcy Code and are not inconsistent with other applicable provisions of the Bankruptcy Code. It is my understanding that the Plan contains various provisions that may be construed as discretionary and are not required for confirmation under the Bankruptcy Code, including, among others, the impairment and unimpairment of Allowed Claims (Section 1123(b)(1)), the assumption or rejection of executory and unexpired leases (Section 1123(b)(2)) and retention of causes of actions (Section 1123(b)(3)(B)).

  **C.** **Sections 1129(a)(2) – 1129(a)(16) - Compliance of the Debtor with the Applicable Provisions of the Bankruptcy Code.**

  15. The Plan Complies fully with the remaining provisions of Section 1129(a)(2) of the Bankruptcy Code.

  **1.** **Section 1129(a)(2) of the Bankruptcy Code**

  16. It is my understanding that the Debtor, as proponent of the Plan, has satisfied all applicable provisions of the Bankruptcy Code, including Sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

  17. It is my understanding that votes to consensually accept or reject the Plan were solicited.

  18. I believe that my respective advisors, attorneys and agents and the Debtor have solicited and tabulated votes on the Plan and have participated in the activities described in Section 1125 of the Bankruptcy Code fairly, in good faith and in a manner consistent with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and

5

regulations, as I understand them. It is my understanding that such persons are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

19. I believe that my respective advisors, attorneys and agent and the Debtor have participated in good faith and compliance with the applicable provisions of the Bankruptcy Code, as I understand them regarding the offering, issuance, and distribution of recoveries under the Plan.

**2.  Section 1129(a)(3) of the Bankruptcy Code – Proposal of Plan in Good Faith**

20. It is my understanding that the Debtor, as proponent of the Plan, has satisfied Section 1129(a)(3) of the Bankruptcy Code. Having been extensively involved with the development of the Plan, I believe that the Debtor has proposed the Plan in good faith and not by any means forbidden by law. Good faith is evident from the facts and record of this chapter 11 case and the hearings thereon, and other proceedings held in this chapter 11 case, including support provided by parties in interest.

21. The Plan was proposed in good faith with the legitimate and honest purposes of maximizing the value of the Debtor's estate and the corresponding recovery to the Debtor's creditors. Indeed, the Plan is the result of collaborative efforts with the Debtor's stakeholders. The Plan is the culmination of an extensive arms' length good faith negotiation process. The Plan achieves the primary objectives of Subchapter V Chapter 11.

22. I further believe that the Plan represents a good faith effort to provide the various stakeholders a recovery superior to that in a hypothetical chapter 7 liquidation, under the totality of the circumstances.

23. The Debtor's professionals and I have had discussions with the Subchapter V Trustee concerning the Chapter 11 Subchapter V case and the proposed Plan.

    **3.**    **Section 1129(a)(4) of the Bankruptcy Code – Court Approval of Certain Payments as Reasonable**

24. It is my understanding that the Plan satisfies Section 1129(a)(4) of the Bankruptcy Code. The payment of certain fees and expenses of retained professionals are subject to final review for reasonableness by the Bankruptcy Court under Section 330 of the Bankruptcy Code. Furthermore, the Plan provides that the Bankruptcy Court shall retain jurisdiction to hear and determine all Fee Applications. Under the terms of the Plan, the Court has jurisdiction to review any dispute with respect to the reasonableness of such fees.

    **4.**    **Section 1129(a)(5) of the Bankruptcy Code – Disclosure of Management and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

25. It is my understanding that the Plan complies with the requirements of Section 1129(a)(5) of the Bankruptcy Code. Article 2, Section 7 of the Plan, Post-Confirmation Management, provides that Sarin and I will continue to operate the Debtor post-confirmation. Our continued operation of the Debtor is consistent with the interests of creditors and with public policy.

    **5.**    **Section 1129(a)(6) of the Bankruptcy Code – Approval of Rate Changes**

26. It is my understanding that the Plan does not provide for any rate change that requires regulatory approval. Therefore, Section 1129(a)(6) of the Bankruptcy Code is not applicable.

    **6.**    **Section 1129(a)(7) of the Bankruptcy Code – Best Interests of Creditors Test**

27. It is my understanding that Section 1129(a)(7) of the Bankruptcy Code has been satisfied. The Debtor prepared a chapter 7 liquidation analysis attached to the Plan as Exhibit C

(the "Liquidation Analysis") and an estimate of the amount available for distribution to holders of allowed claims pursuant to the Plan. Based on my review of the Liquidation Analysis, I believe that the Liquidation Analysis: (a) is reasonable as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions in light of the purpose for which it was prepared; (c) has not been controverted by other evidence; and (d) established that distributions for holders in every impaired Class under the Plan on account of Allowed Claims will receive a value equal to or greater than the amount such holder would be entitled to receive if the Debtor's assets were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code. Moreover, the additional debtor-in-possession financing which the Debtor seeks approval for tomorrow will lend additional support to feasibility of the Plan.

28. Attached as **Exhibit A** are updated projections.

29. Therefore, the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.

**7.    Section 1129(a)(8) of the Bankruptcy Code – Conclusive Presumption of Acceptance by Unimpaired Classes: Acceptance of the Plan by Each Impaired Class**

30. It is my understanding that Section 1129(a)(8) of the Bankruptcy Code is not required for confirmation of a Subchapter V plan except to determine whether the Plan is consensual or not. The Debtor received nine ballots. Three creditors voted in favor of the Plan and six creditors rejected the Plan. See Certification of Ballots.

**Plan Objections**

31. The Debtor received the following objections to confirmation of the Plan:

(i)    Objection filed by Normaze Associates, Inc. (the "Lyndhurst Landlord") (ECF 194). The Lyndhurst Landlord and the Debtor have resolved the objection. The

    Debtor is waiting for a consent order from counsel for the Lyndhurst Landlord to reconcile the pre and post-petition rent which will be set forth in the Consent Order.

(ii) Objection of 750 8th Avenue LLC (the "Times Square Landlord") (ECF 196). The Debtor abandoned this location, however, the Times Square Landlord asserts an administrative claim. The Debtor and the Times Square Landlord have agreed to resolve the objection by the Debtor treating the Times Square Landlord similar to other administrative creditors.

(iii) Objection of Tokyo Century (USA) Inc. ("Tokyo") (ECF 200). Tokyo financed certain of the Debtor's vehicles and holds a purchase money secured interest claim for such vehicles. The Debtor advised Toyko of the location of one of the vehicles, specifically, LN138517. The other vehicle, specifically LN143964, is at an impound lot. Counsel for Tokyo is expected to send the Debtor a consent order to resolve the objection.

(iv) Objection filed by Balboa Capital Corporation ("Balboa") (ECF 201). Balboa filed a Notice of 1111(b) election (ECF 170). The Debtor proposes to pay Balboa its full claim as required under §1111(b) in the amount of $141,197 amortized over ten (10) years at six percent (6%) interest with a balloon payment at the end of year five. This objection has not been resolved.

**8. Section 1129(a)(9) of the Bankruptcy Code – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

32. It is my understanding that the Plan satisfies Section 1129(a)(9) of the Bankruptcy Code. Based on my review of Article 2 of the Plan, the Plan provides for the treatment of Administrative Expense Claims, Priority Tax Claims, Professional Compensation Claims, and

9

other Claims entitled to priority under Sections 507(a)(1)-(8) of the Bankruptcy Code, as applicable, in the manner required by Section 1129(a)(9) of the Bankruptcy Code.

**9. Section 1129(a)(10) of the Bankruptcy Code – Acceptance by At Least One Impaired Class**

33. It is my understanding that Section 11129(a)(10) of the Bankruptcy Code is not required for confirmation of a Subchapter V plan.

**10. Section 1129(a)(11) of the Bankruptcy Code – Feasibility of the Plan**

34. It is my understanding that Section 1129(a)(11) of the Bankruptcy Code has been satisfied. I believe the Plan meets the feasibility requirements under the Bankruptcy Code based upon the projections submitted and attached as Exhibit A.

35. Pursuant to Section 1129(a)(15), the Debtor has committed its post-confirmation future income stream for five (5) years to fund the Plan.

36. Therefore, the Plan is feasible within the meaning of Section 1129(a)(11) of the Bankruptcy Code.

**11. Section 1129(a)(12) of the Bankruptcy Code – Payment of All Fees**

37. It is my understanding that the Plan satisfies Section 1129(a)(12) of the Bankruptcy Code. Pursuant to 28 U.S.C. § 1930, quarterly fees are not due to the United States Trustee under Subchapter V of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code.

**12. Section 1129(a)(13) of the Bankruptcy Code – Payment of Retiree Benefits**

38. The Debtor has no obligation to pay "retiree benefits" within the meaning of Section 1114 of the Bankruptcy on or before the Filing Date. Accordingly, Section 1129(a)(13) of the Bankruptcy Code is not applicable.

### 13. Section 1129(a)(14) of the Bankruptcy Code – Domestic Support Obligation

39. The Debtor is not required to pay any domestic support obligations. Accordingly, Section 1129(a)(14) is not applicable.

### 14. Section 1129(a)(15) of the Bankruptcy Code – Individual

40. Pursuant to Section 1191(a) of the Bankruptcy Code, Section 1129(a)(15) is not applicable in this proceeding.

### 15. Section 1129(a)(16) of the Bankruptcy Code – Transfers of Property Under the Plan

41. All transfers of property pursuant to the Plan, if any, have been made in accordance with applicable provisions of non-bankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

### D. The Requirements of 11 U.S.C. § 1191 Have Been Satisfied

42. Pursuant to 11 U.S.C. § 1191(a) and as set forth above, it is my understanding that all requirements of section 1129(a) of the Bankruptcy Code, other than paragraphs (8), (10) and (15) of that section, are met.

43. Even if the Court finds that the Subchapter V Plan does not meet the provisions of 11 U.S.C. § 1191(a), the Subchapter V Plan meets the requirements of 11 U.S.C. § 1191(b) as the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. Any creditor that is "impaired" is being paid the "value" of its claim in the Plan.

44. More specifically, and as demonstrated through the monthly operating reports, the Subchapter V Plan is fair and equitable with respect to each class of claims or interests because:

  a. With respect to each class of secured claims, the Subchapter V Plan meets the requirements of section 1129(b)(2)(A);

  b. As of the effective date of the Plan, the Plan provides that all of the projected disposable income of the Debtor to be received in the five-year period of the Plan will be applied to make payments thereunder; and

  c. The Debtor will be able to make all payments under the Plan especially with additional debtor-in-possession financing.

45. Regardless of the votes, the Subchapter V Plan does not discriminate unfairly, and is fair and equitable. As to the Debtor's secured creditors, it is my understanding that they are being treated consistently with the requirements of section 1129(b)(2)(A) of the Bankruptcy Code.

46. Thus, each of the provisions of 11 U.S.C. § 1191 have been satisfied.

**E. The Principal Purpose of the Plan Is Not Tax Avoidance Under Section 1129(d) of the Bankruptcy Code.**

47. I believe that the Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code. Although implementation of the Plan may avoid adverse tax consequences that may otherwise arise from the transactions contemplated by the Plan, based on my review of the Plan, the principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933. Moreover, no governmental unit, or any other party, has thus far raised any objection to the Plan on these grounds, and I do not anticipate any such objections will be filed.

**F. Disclosures made to the U.S. Trustee, Subchapter V Trustee and Creditors**

48. Since the filing of the Chapter 11 Petition, the Debtor has produced a multitude of documents concerning the Debtor's financial condition. In this regard, the Debtor has provided documents to various creditors and parties in interest in the bankruptcy case.

I hereby certify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct.

By: */s/ Oleg Azizov*
Oleg Azizov

Dated: December 10, 2024

4911-0473-6005, v. 1

# EXHIBIT A

703 BAKERY CORP     12/9/2024 17:26
24-15150-VFP
Five Year Projected Cash Flow

|  | Dec-24 | 2025 | 2026 | 2027 | 2028 | 2029 | Total |
|---|---:|---:|---:|---:|---:|---:|---:|
| Total Sales | $ 800,000 | $ 11,750,000 | $11,985,000 | $ 12,104,850 | $ 12,225,899 | $ 12,348,157 | 61,213,906 |
| COGS @ 21.5% | 142,000 | 2,476,250 | 2,518,775 | 2,602,543 | 2,628,568 | 2,654,854 | 13,022,990 |
| Payroll & Taxes | 432,407 | 5,344,887 | 5,344,887 | 5,446,134 | 5,499,395 | 5,553,189 | 27,620,900 |
| Rent | 96,000 | 1,224,000 | 1,248,480 | 1,273,450 | 1,298,919 | 1,324,897 | 6,465,745 |
| Utilities | 41,000 | 495,500 | 495,500 | 495,500 | 495,500 | 495,500 | 2,518,500 |
| Sales Tax | 48,000 | 705,000 | 719,100 | 726,291 | 733,554 | 740,889 | 3,672,834 |
| Credit Card Fees | 24,000 | 352,500 | 359,550 | 363,146 | 366,777 | 370,445 | 1,836,417 |
| Insurance | 13,000 | 156,000 | 156,000 | 156,000 | 156,000 | 156,000 | 793,000 |
| Software Expenses | 12,500 | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 762,500 |
| Advertising & marketing | 10,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 510,000 |
| Repairs & Maintenance | 5,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 305,000 |
| Vehicle gas & fuel | 4,000 | 50,400 | 50,400 | 50,400 | 50,400 | 50,400 | 256,000 |
| Supplies | 5,000 | 63,000 | 63,000 | 63,000 | 63,000 | 63,000 | 320,000 |
| Rabinical Supervision | 7,500 | 90,000 | 90,000 | 90,000 | 90,000 | 90,000 | 457,500 |
| Travel & Delivery | 3,800 | 47,880 | 47,880 | 47,880 | 47,880 | 47,880 | 243,200 |
| Truck Lease | 3,778 | 45,336 | 45,336 | 45,336 | 45,336 | 45,336 | 230,458 |
| Equipment Leases | 7,500 | 108,000 | 108,000 | 108,000 | 108,000 | 108,000 | 547,500 |
| Office Expenses | 4,500 | 54,000 | 54,000 | 54,000 | 54,000 | 54,000 | 274,500 |
| Total Expenses | 717,985 | 9,046,503 | 9,092,133 | 9,229,136 | 9,318,761 | 9,409,536 | 46,814,054 |
| Cash Flow From Operations | (59,985) | 227,247 | 374,092 | 273,171 | 278,570 | 283,767 | 1,376,862 |
| Money from Investor | 75,000 |  |  |  |  |  | 75,000 |
| **Less Plan Payments:** |  |  |  |  |  |  |  |
| SBA | 741 | 7,414 | 7,414 | 7,414 | 7,414 | 7,414 | 37,813 |
| Priority Sales Taxes |  | 28,800 | 28,800 | 28,800 | 28,800 | 28,800 | 144,000 |
| Admin Claims |  | 120,000 | 255,000 |  |  |  | 375,000 |
| Secured Claims | 6,734 | 67,218 | 12,000 | 12,000 | 12,000 | 12,000 | 121,952 |
| Unsecured Claims |  | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 300,000 |
| Beginning Cash | 50,000 | 57,539 | 1,354 | 12,232 | 177,189 | 347,544 | 50,000 |
| Ending Cash | $ 57,539 | $ 1,354 | $ 12,232 | $ 177,189 | $ 347,544 | $ 523,097 | 401,145 |